## 10691.

### TERRY PACKING CO. v. A. C. L. R. R. CO.

#### (108 S. E. 151.)

RAILROADS—CONTRACT LIABILITY FOR LOSS OF CARS A QUESTION OF FACT —In an action by a packing company against a railroad for the value of refrigerator cars owned by the packing company and destroyed by fire on the railroad's tracks, plaintiff company's claim of liability against the railroad being grounded on a stipulation in the rules of the Master Car Builders' Association, whether or not plaintiff company's cars were received and were to be handled by defendant railroad under exactly the same terms and conditions as the cars of a regular railroad company, a member of the Car Builders' Association, was one of fact; the evidence offered by plaintiff company tending to support such theory.

Before SEASE, J., Richland, April, 1919. Reversed and new trial ordered.

Action by Terry Packing Co. against Atlantic Coast Line Railroad Co. From directed verdict for plaintiff the defendant appeals.

*Messrs. Frank G. Tompkins* and *W. A. Townes,* for appellant, cite: *Car of one company moving over tracks of another company under load, is taken by second company as a common carrier and it is liable as such for damage while in its possession*: 29 Am. Rep. 348; 39 Barb. 488; 123 Ill. 594; 25 Fed. Rep. 317. *But not liable where cars were leased by defendant from plaintiff*: 26 Minn. 243, 37 Am. Rep. 404; 22 R. C. L. Sec. 327, p. 1096. *Relation of bailor and bailee and no liability in the absence of negligence*: Story Bail. (8th Ed.) 23, 410, 410a; 26 Minn. 243, 37 Am. Rep. 404.

*Messrs. Benet, Shand & McGowan,* for respondent, cite: *Meaning of "accidental"*: 1 Words & Ph. 62; 17 Sou. 2, 30 L. R. A. 206; 2 Biddle Ins. 780; 29 Sou. 26, 29 (Ala.); 139 U. S. 79, 35 L. Ed. 97. *Defendant held cars as common carrier*: 136 Ill. 643, 29 Am. St. Rep. 348.

August 1, 1921.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

Action by Terry Packing Company for $1,385.60, the value of three refrigerator cars owned by it, destroyed by fire at Punta Gorda, Fla., while upon the tracks of the defendant. From a judgment in favor of the plaintiff for the full amount claimed, entered upon a verdict by direction of the Circuit Judge, the defendant appeals.

The facts of the case are substantially as follows:

Terry Packing Company is a corporation engaged at Columbia, S. C., in the purchase, distribution, and sale of fresh fish, shipped in carload lots from Punta Gorda, Fla., to Columbia and other points. The refrigerator cars used for this purpose belonged to Terry Packing Company. In May, 1915, three of the cars were returned empty to Punta Gorda and placed upon the track of a dock owned by the defendant, and alongside of a fish-packing plant of certain vendors, who sold fish to the Terry Packing Company, awaiting loading and shipment. On June 27, 1915, a fire of incendiary origin destroyed the fish-packing plant and the three cars. The defendant was in no way to blame for the fire.

The plaintiff makes no charge of negligence against the defendant, nor does it seek, in the complaint, to hold the defendant liable as a common carrier. It relies upon a certain stipulation in the rules of the Master Car Builders' Association, to the effect that "damage done to any car by unfair usage, derailment, or accident" is assumed by the railroad company handling the car. It seeks to connect itself with those rules, so as to get the benefit of such assumption of responsibility by the defendant.

The rules of the Master Car Builders' Association are a set of rules adopted by practically all of the railroad companies in the United States, providing, in the interchange of cars, for repairs made upon cars of one line when broken

on the line of another company, and for the loss of or dam-
age to such cars by fire or otherwise.   Among these rules is
the rule above quoted.   The plaintiff was not a member of
that association; possibly, having no railroad of its own
upon which the cars of other companies might operate, it
could not become a member; it did not sign any contract,
or secure a contract from the defendant, entitling the plain-
tiff to the benefits of the Master Car Builders' rules.

The plaintiff relies upon the following circumstances to
establish the same obligation on the part of the defendant
to it as the defendant owed to members of the Master Car
Builders' Association, in the matter of responsibility for
the destruction of a car by fire, regardless of its culpability.

The plaintiff became dissatisfied with the handling of its
goods in the refrigerator cars belonging to   the   railroad
companies and certain transportation lines, and determined
to lease or buy cars of its own.   Accordingly the plaintiff
in April, 1913, opened negotiations with the car accountant
of the defendant, who wrote the plaintiff on April 28, 1913,
that he could probably secure cars from a certain party in
Chicago.   In that letter the car accountant stated that the
cars would be "handled under our tariffs" allowing com-
pensation to the plaintiff at the rate of three-fourths of a
cent per mile, loaded and empty, while in service.   He also
stated that, when it became necessary to repair the cars, the
work would be done and bills rendered by the mechanical
department of his road.   Nothing was said in that letter to
indicate that the rules of the Master Car Builders' Associa-
tion would be binding upon the defendant or upon the plain-
tiff.   Between April 27th and August 20th   the plaintiff
secured 10 refrigerator cars, and on the latter date so noti-
fied the car accountant.   He replied on the 21st, stating
that he had issued instructions permitting the cars to re-
main in service and added:

"I am inclosing herewith copy of our tariff, which governs the handling of refrigerator cars of private ownership, and by reference to page 19 you will note that we pay three-fourths cents per mile on loaded or empty movements, with the provision that any excess empty mileage, at the end of a fixed period of time, will be billed for at regular tariff rates.    This applies to cars in service."

There is nothing in this letter to indicate that the rules of the Master Car Builders' Association would be binding upon either party.    The President of the plaintiff company testified that when the cars were put in service the car accountant furnished the defendant (evidently meaning the plaintiff) with a copy of said rules; that repair bills were sent to the plaintiff every month, based upon the schedule set out in the Master Car Builders' rules, and were paid; that during the time the plaintiff owned the cars they were used by railroads all over the United States, for which he had received compensation from the various railroads using them; that after they were put in service the plaintiff had no further control over the cars, and they would be moved on various lines without plaintiff's consent or knowledge; that all cars tendered for traffic had to comply with the said rules; and that plaintiff was specifically notified by the car accountant that its cars must be in accordance with the Master Car Builders' rules, if he wished them operated over the line of the defendant or other roads..

The question whether or not the plaintiff's cars were received and were to be handled by the defendant under exactly the same terms and conditions as the cars of a regular railroad company, a member of the Master Car Builders' Association, is one of fact.    The evidence offered by the plaintiff tends to support that theory, and therefore the motion of the defendant for a directed verdict was properly refused; but it does not necessarily establish that fact.    The plaintiff nowhere testifies that there was an express agreement that all

25—s. c. 116

the terms of the Master Car Builders' rules should be applicable to his arrangement. He relies upon an inference from certain facts to establish that fact; that because he was furnished with the rules, that the repairs were made and paid for according to the rules, that his cars had to come up to the standard of the rules, it follows that there was no difference between him and any other transportation line owning cars used by the defendant. As a matter of law, we cannot say that this is true. The correspondence shows only a reference to the matter of repairs, and the furnishing of the rules might be deemed compatible with their limitation to this feature; so with the settlement of the repairs and the required equipment.

If the Master Car Builders' rule as to the responsibility for the destruction of the car should appear, upon a determination of the facts in issue, applicable to the relation existing between the parties, a further question, as to which we express no opinion, would arise, whether or not that rule would apply to a car not in service at the time of its destruction, under the tariff regulations specifically invoked and referred to in the correspondence as governing the situation.

The judgment of this Court is that the judgment of the Circuit Court be reversed, and the case remanded for a new trial.